1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KATHERINE ROBINSON, and                    No.  2:14-cv-02910-KJM-KJN
     WILLIAM ROBINSON,
12
                 Plaintiffs,
13                                               ORDER
           v.
14
     COUNTY OF SHASTA, et al.,[1]
15
                 Defendants.
16

17

18        The motions of defendants City of Redding (City),  Shasta County (County), Gene

19   Randall, and Jenelle Bartolo (collectively, County defendants) to dismiss plaintiffs' seventh claim

20   of the operative third amended complaint are pending before the court.  (ECF Nos. 26, 30.)

21   _____

22        [1]  Plaintiffs have also sued Doe defendants.  The Ninth Circuit has held that if a
     defendant's identity is not known before the complaint is filed, a "plaintiff should be given an
23   opportunity through discovery to identify the unknown defendants."  *Wakefield v. Thompson*, 177
     F.3d 1160, 1163 (9th Cir. 1999) (quotation marks omitted) (quoting *Gillespie v. Civiletti*, 629
24   F.2d 637, 642 (9th Cir. 1980)).  Plaintiffs are warned, however, that Doe defendants will be
     dismissed if "it is clear that discovery would not uncover the[ir] identities, or that the complaint
25   would be dismissed on other grounds."  *Id.* (quotation marks omitted) (quoting *Gillespie*, 629
     F.2d at 642).  Plaintiffs are also warned that Federal Rule of Civil Procedure 4(m) is applicable to
26   Doe defendants.  That rule provides the court must dismiss defendants who have not been served
     within 120 days after the filing of the complaint unless good cause is shown.  *See Glass v. Fields*,
27   No. 09-00098, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v.
     Does*, No. 11-01567, 2011 U.S. Dist. LEXIS 109837, at *2–4 (N.D. Cal. Sep. 27, 2011).
28
                                    1

1    Plaintiffs oppose the motions.  (ECF Nos. 31, 32.)  Defendants have replied.  (ECF Nos. 33, 34.)

2    The court held a hearing on August 7, 2015.  At the hearing, Larry Baumbach appeared for

3    plaintiffs, Gary Brickwood appeared for the City, and James Ross appeared for the County and

4    County defendants.  As explained below, the court GRANTS the motions.

5    I.        FACTUAL ALLEGATIONS[2] AND PROCEDURAL BACKGROUND

6                  Plaintiffs, individually and as co-administrators of Matthew Robinson's estate,

7    bring this action under 42 U.S.C. § 1983.  (Plaintiffs' Third Am. Compl. (Compl.) ¶ 1, ECF No.

8    25.)  Plaintiffs are the decedent's parents and his only surviving heirs.  (*Id.*)  Defendants are

9    the City, City Police Officers Woods and Hollemon, City Police Chief Robert F. Paoletti, the

10   County, and County Sheriff Deputies Gene Randall and Jenelle Bartolo.  (*Id.* ¶¶ 2–7.)

11                 On July 19, 2014, the decedent was transported from the Enloe Medical Center in

12   Chico, California to the RestPadd Psychiatric Health Facility in Redding, California for

13   rehabilitation and treatment purposes.  (*Id.* ¶ 8.)  Upon arrival, the decedent became severely

14   agitated while still in the back seat of the transportation vehicle.  (*Id.*)  Because of the decedent's

15   mental state, RestPadd did not admit him into the facility and recommended he be taken to the

16   Mercy Medical Center.  (*Id.*)  The medical transport driver called Redding Police to assist with

17   removing decedent from the car.  (*Id.*)  Officers Woods and Hollemon arrived to the scene.[3]

18                 Upon arrival, Officer Woods "announced to [the decedent] that he must remove

19   himself from the vehicle or the officer would 'beat his ass.'"  (*Id.*)  While attempting to remove

20   the decedent from the car, the decedent resisted; he "attempt[ed] to pull away."  (*Id.*)  The officers

21   ultimately took him to the ground, and while on the ground, Officer Woods began beating him;

22   Officer Woods struck the decedent ten times in the face.  (*Id.*)  The decedent stopped breathing, at

23   which point, the paramedics on the scene began resuscitation, and the decedent was taken to the

24   /////

25   _____

26        [2] For purposes of this motion, the court accepts the factual allegations in the third
     amended complaint as true.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 907 (9th Cir. 2012).

27        [3] It is unclear from the allegations where the "scene" is.

28

1    Mercy Medical Center.  (*Id.*)  The decedent remained in a coma until he passed away on July 27,

2    2014.  (*Id.*; ECF No. 26-2, Ex. 1.)[4]

3              The claim at issue, plaintiffs' seventh claim, incorporates preceding paragraphs

4    and makes allegations against both the County and City as follows.  After the decedent passed

5    away, the County, as the coroner under California Government Code section 27491,[5] took

6    possession of the decedent's body.  (Compl. ¶¶ 47–48.)  The coroner has a duty to gather

7    evidence to provide the assigned medical examiner with complete evidence to allow the medical

8    examiner to reach an accurate determination of a cause of death.  (*Id.*)  Instead of fulfilling those

9    duties, in the instant case, the County, through detectives Randall and Bartolo, conspired with the

10   City to prevent Dr. Raven from conducting an accurate examination.  (*Id.* ¶ 48.)

11             As an example, plaintiffs allege County defendants did not deliver to the medical

12   examiner "brain tissue samples, bodily fluid samples such as blood and urine which were . . .

13   necessary to arrive at an accurate cause of death."  (*Id.*)  "The delay and hindrance became so

14   intense that Dr. Raven resigned her position and moved out of state without completing the

15   autopsy."  (*Id.*)  Dr. Raven "resigned in part because she was receiving pressure from the

16   Coroner's Office to arrive at a cause of death that protected and insulated the [City Police

17   Department] from responsibility in causing [the decedent's] death."  (*Id.* ¶ 51.)  The County then

18   published its autopsy results after six months and affixed Dr. Raven's name on the report.  (*Id.*)

19   The report assigned the cause of death as "excited delirium"[7] even though that was not Dr.

20   _____

21             [4]  The County asks this court to take judicial notice of a document titled "Verdict of
     Death" prepared by the County's Sheriff's Office.  (ECF No. 26-2, Ex. 1.)  Plaintiffs do not
22   oppose that request.  The court GRANTS the County's request.  *See Lee v. City of Los Angeles*,
     250 F.3d 668, 689 (9th Cir. 2001).

23             [5]  Section 27491 provides that, "It shall be the duty of the coroner to inquire into and
24   determine the circumstances, manner, and cause of" deaths listed in that section.  Cal. Gov't Code
     § 27491.

25
             [6]  "[I]n the past few years the term has been used increasingly by medical examiners to
26   explain sudden deaths in custody of individuals in a highly agitated state—usually under the
     influence of drugs or with some form of psychosis—who suffer a surge of adrenaline and collapse
27   after struggle and police restraint."  Mark Kaylan Beard, *Simply Stunning! A Proposed Solution
     for Regulating the Use of Tasers by Law Enforcement in the Seventh Circuit*, 49 Val. U. L. Rev.
28   907, 917 n.61 (2015) (alteration in original; citation omitted); *see also* Michael L. Storey,

1   Raven's opinion.  (*Id.*)  On December 30, 2014, the County issued the "Verdict of Death," on

2   which the manner of death was noted as "could not be determined."  (*Id.* ¶ 49.)  In conclusion,

3   plaintiffs allege the County and its individual defendants deprived plaintiffs of their rights

4   protected by the Fifth and Fourteenth Amendments.  (*Id.* ¶ 51.)

5   II.    LEGAL STANDARD

6          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

7   complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

8   "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

9   cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

10         Although a complaint need contain only "a short and plain statement of the claim

11   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to

12   dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

13   to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

14   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

15   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

16   conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting

17   *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

18   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

19   its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

20   interplay between the factual allegations of the complaint and the dispositive issues of law in the

21   action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

22         In making this context-specific evaluation, this court "must presume all factual

23   allegations of the complaint to be true and draw all reasonable inferences in favor of the

24   nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule

25

26   *Explaining the Unexplainable: Excited Delirium Syndrome and Its Impact on the Objective*
     *Reasonableness Standard for Allegations of Excessive Force*, 56 St. Louis U. L.J. 633, 637
27   (2012) (explaining  individuals experiencing EDS "suffer from increased rates of adrenaline, and
     ultimately, the anxiety caused by the adrenaline results in a heart attack or a failure of the
28   respiratory system").  "However, the American Medical Association has not yet recognized EDS
     as a diagnosis."  Beard, *supra*, at 917 n.61.

1  does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

2  U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters

3  properly subject to judicial notice," or to material attached to or incorporated by reference into the

4  complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

5  III.    DISCUSSION

6          A.    The City's Motion to Dismiss

7                The City moves to dismiss plaintiffs' seventh claim, arguing (1) there are no

8  factual allegations showing the City's violation of plaintiffs' constitutional rights and (2) to the

9  extent plaintiffs seek to bring a denial of access to the courts claim, such a claim is not ripe.

10  (ECF No. 30.)

11               Plaintiffs respond the allegations are sufficient to establish a conspiracy between

12  the City and County, and their claim for a right of access is ripe.  (ECF No. 32.)

13                      1.    Plaintiffs Have Sufficiently Alleged a Conspiracy

14               Conspiracy is not an independent tort under § 1983.  *Lacey*, 693 F.3d at 935.

15  There must be an underlying constitutional violation; conspiracy does not expand the nature of a

16  plaintiff's claims.  Rather, conspiracy may widen the pool of responsible defendants by showing

17  their causal connections to the underlying violation.  *Id.* (noting "the fact of the conspiracy may

18  make a party liable for the unconstitutional actions of the party with whom he has conspired").

19               To allege a conspiracy, a plaintiff must show "an agreement or meeting of the

20  minds to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).  "To

21  be liable, each participant in the conspiracy need not know the exact details of the plan, but each

22  participant must at least share the common objective of the conspiracy." *Id.*  Such an agreement

23  may be inferred from circumstantial evidence and need not be overt. *Mendocino Envtl. Ctr. v.*

24  *Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999).  Whether defendants were involved in an

25  unlawful conspiracy is usually a factual question to be resolved by a jury, "so long as there is a

26  possibility that the jury can infer from the circumstances (that the alleged conspirators) had a

27  'meeting of the minds' and thus reached a [sic] understanding to achieve the conspiracy's

28  objectives." *Id.* at 1301–02 (internal quotation marks omitted).

5

1    Here, the court finds plaintiffs have alleged sufficient circumstantial facts to

2    support a conspiracy claim.  Plaintiffs allege defendant County, through its sheriff's department

3    and individual defendants Randall and Bartolo, conspired with the City defendants to "prevent the

4    Medical Examiner, Katherine Raven M.D. . . . from conducting a complete and accurate medical

5    examination."  (Compl. ¶ 48.)  "Dr. Raven resigned in part because she was receiving pressure

6    from the Coroner's Office to arrive at a cause of death that protected and insulated the [City

7    Police Department] from responsibility in causing the [decedent's] death."  (*Id.* ¶ 51.)  Dr. Raven

8    resigned because she did not want to go along with the conspiracy.  (*Id.*)  Nonetheless, after Dr.

9    Raven left, defendants continued to pursue their agreement "to issue a cause of death analysis that

10   relieved the [City Police Department] from its responsibility . . . ."  (*Id.*)  Specifically, the report

11   the County issued found the cause of the decedent's death to be "excited delirium" (*id.* ¶ 50), and

12   the manner of death "could not be determined" (*id.* ¶ 49).

13   These allegations, taken as true and construed in the light most favorable to

14   plaintiffs at this stage of the litigation, are sufficient to show the County and City plausibly had an

15   agreement to hide the real cause of the decedent's death.  Because conspiracy is not an

16   independent action under § 1983, the court next addresses whether plaintiffs have sufficiently

17   alleged an underlying constitutional violation.

18   2.    Plaintiffs' Claim for Access to Courts is not Ripe

19   At the hearing on the instant motion, plaintiffs confirmed that they base their

20   conspiracy claim on a right of access to courts.  (*See* ECF No. 32 at 3.)

21   Defendants argue plaintiffs' denial of access claim is not ripe because the

22   underlying litigation is still pending and thus there is no basis for assessing any harm "flowing

23   from the alleged denial of access[.]"  (ECF No. 30 at 5–6.)  At hearing, plaintiffs countered that

24   the court's decision to determine ripeness is discretionary.

25   "[T]he right of access to the courts is a fundamental right protected by the

26   Constitution."  *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998) (citing *Chambers v.*

27   *Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907)).  The Supreme Court's decisions have based the

28   right of access to courts in "the Article IV Privileges and Immunities Clause, the First

6

1    Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth

2    Amendment Equal Protection and Due Process Clauses." *Christopher v. Harbury*, 536 U.S. 403,

3    415 n.12 (2002) (internal citations omitted, collecting cases).  "However unsettled the basis of the

4    constitutional right of access to courts, [the] cases rest on the recognition that the right is ancillary

5    to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of

6    court." *Id.* at 415.  In *Christopher*, the Supreme Court clarified the nature of the denial of access

7    claim and identified two categories of access-to-courts claims: forward-looking and backward-

8    looking claims.  *Id.* at 413–14.  At the hearing on the instant motion, plaintiffs clarified they were

9    relying on both categories in their claim against the City defendants.

10                                         a.   Forward-looking Claim

11           Forward-looking claims allege official action is hindering the preparation and

12   filing of an action at the present time.  *Id.* at 413.  The objective of such a claim is to remove the

13   hindrance and "place the plaintiff in a position to pursue a separate claim once the frustrating

14   condition has been removed."  *Id.*  Here, plaintiffs have not alleged there is a present hindrance

15   that prevents them from filing a separate action.  And in fact they have filed one here.

16   Accordingly, the court GRANTS defendants' motion to dismiss to this extent.  Plaintiffs are

17   GRANTED leave to amend, however, if they can do so consonant with Rule 11.

18                                         b.   Backward-looking Claim

19           On the other hand, backward-looking claims allege that official acts

20           caused the loss or inadequate settlement of a meritorious case, the
             loss of an opportunity to sue, or the loss of an opportunity to seek
21           some particular order of relief . . . .   These cases do not look
             forward to a class of future litigation, but backward to a time when
22           specific litigation ended poorly, or could not have commenced, or
             could have produced a remedy subsequently unobtainable.   The
23           ultimate object of these sorts of access claims, then, is not the
             judgment in a further lawsuit, but simply the judgment in the access
24           claim itself, in providing relief obtainable in no other suit in the
             future.
25

26   *Id.* at 414 (internal citations omitted).

27           Specifically, in a "backward-looking" access to the courts action, a plaintiff must

28   identify (1) a non-frivolous underlying claim that was allegedly compromised "to show that the

                                                    7

1    'arguable' nature of the claim is more than hope"; (2) the official acts that frustrated the litigation

2    of that underlying claim; and (3) a "remedy available under the access claim and presently unique

3    to it" that could not be awarded by bringing a separate action on an existing claim.  *Id.* at 416.

4    That is because "[t]here is, after all, no point in spending time and money to establish facts

5    constituting denial of access when a plaintiff would end up just as well off after litigating a

6    simpler case without the denial-of-access element."  *Id.* at 415.  For that reason, the Ninth Circuit

7    has made clear that, to prevail on a backward-looking denial of access claim based on a cover-up

8    of evidence theory, a plaintiff must demonstrate that defendants' cover-up made other available

9    remedies ineffective.  *Delew*, 143 F.3d at 1222–23.

10           A plaintiff naturally cannot make such a showing where an action on the

11   underlying claim is pending.  For example, in *Karim–Panahi v. Los Angeles Police Department*,

12   the plaintiff brought both a Fourth Amendment unreasonable search and seizure claim and a

13   denial of access claim. 839 F.2d 621, 625 (9th Cir. 1988).  The denial of access claim alleged that

14   the defendants, also named in the Fourth Amendment claim, falsified facts and destroyed

15   evidence and documents, resulting in obstruction of justice.  *Id.* at 625.  The Ninth Circuit found

16   "[s]uch allegations may state a federally cognizable claim provided that defendants' actions can

17   be causally connected to a failure to succeed in the present lawsuit."  *Id.*  "However," it further

18   noted, "if plaintiff were to succeed in this suit, then his cover-up allegations would be mooted."

19   *Id.*  And "[b]ecause the ultimate resolution of [that] suit remain[ed] in doubt," the Ninth Circuit

20   found the plaintiff's "cover-up claim [wa]s not ripe for judicial consideration."  *Id.*  Hence, the

21   Ninth Circuit concluded the plaintiff's denial of access claim should have been dismissed without

22   prejudice.  *Id.*  Even recognizing that dismissal without prejudice in such a situation places a

23   plaintiff "in a peculiar position," where "resolution of [the plaintiff's] present case remains

24   uncertain, the proper course of action is to hold that his conspiracy claim is not ripe for judicial

25   consideration."  *Ting v. United States*, 927 F.2d 1504, 1516 (9th Cir. 1991) (Reinhardt, J.,

26   dissenting).

27           Here, the court finds that to the extent plaintiffs bring a denial of access claim

28   based on a backward-looking theory, that claim is not ripe.  Plaintiffs' underlying claims against

1    the City defendants include (1) wrongful death; (2) injury resulting in death; and (3) municipal

2    liability, among others.  (*See generally* ECF No. 25.)  Those claims are still pending.  Plaintiffs'

3    seventh denial of access claim against the City is DISMISSED without prejudice.  *See Burns v.*

4    *City of Concord*, ___ F. Supp. 3d ___, ___, No. 14-00535, 2015 WL 1738208, at *13–14 (N.D.

5    Cal. Apr. 9, 2015) (because plaintiffs' underlying claims for violating Fourth and Fourteenth

6    Amendments were still pending, plaintiffs' claim for denial of access was not ripe and so was

7    dismissed without prejudice).

8            Because the court determines the denial of access claim is not ripe, the court need

9    not address the City defendants' remaining arguments at this time.

10           B.      The County's Motion to Dismiss

11           The County and County defendants argue that to the extent plaintiffs attempt to

12   allege a violation of duty under California Government Code section 27491, their claim cannot

13   proceed because (1) they did not comply with the Government Claims Act; (2) the statutory duty

14   does not reach a decedent's parents; and (3) the Coroner cannot be held liable for exercising

15   discretion in the autopsy's performance.  (ECF No. 26 at 1–2.)  In addition, these defendants

16   argue that to the extent plaintiffs bring a denial of access claim, it is not ripe for adjudication.  (*Id.*

17   at 2.)

18                   1.      Duty under California Government Code section 27491

19           At the hearing, plaintiffs conceded they are not alleging a separate claim under

20   section 27491, because they have not complied with California's Government Claims Act.

21                   2.      Meaningful Access to the Courts

22           To the extent plaintiffs bring a backward-looking claim for access to courts against

23   the County, the court finds the allegations are insufficient to survive defendants' motion to

24   dismiss.  As discussed above, the right of access to courts is ancillary to the underlying claim.

25   *Christopher*, 536 U.S. at 415.  Plaintiff must therefore identify a non-frivolous underlying claim

26   that was allegedly compromised "to show that the 'arguable' nature of the claim is more than

27   hope."  *Id.* at 416.  "[T]he underlying cause of action, whether anticipated or lost, is an element

28   that must be described in the complaint, just as much as allegations must describe the official acts

                                                          9

1   frustrating the litigation." *Id.* at 415.  In addition, "when the access claim (like this one) looks

2   backward, the complaint must identify a remedy that may be awarded as recompense but not

3   otherwise available in some suit that may yet be brought." *Id.* (parenthetical in original).

4          Here, it appears from the complaint that the only claim plaintiffs bring against the

5   County is their seventh claim.  Plaintiffs allegations are unclear as to the identity of the

6   underlying claim that the alleged misconduct by the County has compromised, "going no further

7   than the protean allegation," *id.* at 418, that defendants "acted maliciously and deliberately to

8   mislead and issued false information and statements regarding the true cause of death thereby

9   depriving the plaintiffs of that knowledge and of any accurate knowledge of the cause of death of

10  [decedent] Matthew Robinson in an attempt to deprive the plaintiffs of their rights as outlined

11  herein" (Compl. ¶ 50).  The court and defendants are left to guess at the "unstated cause of action

12  supposed to have been lost, and at the remedy being sought . . . ." *Christopher*, 536 U.S. at 418.

13  Because plaintiffs' complaint is insufficient to give fair notice to defendants about the underlying

14  cause of action and the claimed lost remedy, the court GRANTS defendants' motion to dismiss

15  plaintiffs' seventh claim against the County and County defendants.  However, the court

16  GRANTS plaintiffs leave to amend if they can do so consonant with Rule 11.

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

10

IV.     <u>CONCLUSION</u>

        For the foregoing reasons, the court orders as follows:

       1.  Plaintiffs' seventh claim against the City is DISMISSED with leave to amend to the extent it alleges a denial of access claim based on a forward-looking theory.

       2.  Plaintiffs' seventh claim against the City is DISMISSED without prejudice, to the extent it alleges a denial of access claim based on a backward-looking theory.

       3.  Plaintiffs' seventh claim against the County and the County defendants is DISMISSED with leave to amend.

       4.  Plaintiffs' amended complaint is due within twenty-one (21) days of the date of this order.

       5.  This order resolves ECF Nos. 26, 30.

        IT IS SO ORDERED.

DATED:  September 14, 2015.


_____
UNITED STATES DISTRICT JUDGE